UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEO MITCHELL | CIVIL ACTION |
| VERSUS | NUMBER: 11-2910 |
| N. BURL CAIN, WARDEN | SECTION: "J"(5) |

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Leo Mitchell, Mitchell's supplemental complaint, the State's response, Mitchell's reply and Mitchell's supplemental memorandum in support of habeas corpus relief. (Rec. docs. 1, 5, 16, 18, 19). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Mitchell's petition be dismissed with prejudice.

I. PROCEDURAL BACKGROUND[1]

Petitioner Mitchell is a state prisoner who is presently

---

[1] A portion of the procedural history was taken from the Louisiana Fifth Circuit Court of Appeal's opinion, State v. Mitchell, 7 So.3d 720 (La. App. 5 Cir. 2009).

incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 1, 2000, Mitchell was charged by grand jury indictment with the first degree murder of Henry Porter, Sr. A sanity commission was appointed and, ultimately, Mitchell was found competent to stand trial. On June 23, 2005, the indictment was amended to reduce the charge to second degree murder. On December 22, 2005, all charges were dismissed, and new charges were filed. In a second Grand Jury Indictment, Mitchell was charged with the second degree murder of Henry Porter, Sr., the attempted second degree murder of Howard Bardell, and the second degree kidnaping of Elena Smith.

On February 17, 2006, following a jury trial in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Mitchell was found guilty as charged. (St. rec., vol. 7, p. 981; st. rec., vol. 4, p. 112). At the sentencing hearing held on March 6, 2006, the trial judge, in connection with Mitchell's second degree murder conviction, sentenced him to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. With regard to Mitchell's attempted second degree murder conviction, the trial court sentenced him to serve 50 years at hard labor without benefit of parole, probation or suspension of sentence. Finally, with regard to his second degree kidnaping conviction, the trial court sentenced Mitchell to serve 30 years at

2

hard labor without benefit of parole, probation or suspension of sentence. The court specified that all of the sentences were to run concurrently with each other and with credit for time served. (St. rec., vol. 7, pp. 989-990). On that same day, the State filed a multiple offender bill of information charging that Mitchell was a second felony offender with regard to the attempted second degree murder conviction. (St. rec., vol. 4, p. 116). As evidenced by the district court's minute entry (<u>see</u> attached), on July 21, 2008, the State "withdrew its Multiple offender bill" and informed that it "will not go forward with it."

On January 13, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed Mitchell's convictions and sentences. <u>State v. Mitchell</u>, 7 So.3d 720 (La. App. 5 Cir. 2009). Mitchell did not seek relief from the Louisiana Supreme Court.

On or about December 4, 2009, Mitchell filed a post-conviction application. (St. rec., vol. 3). In his post-conviction application, Mitchell raised the same claims raised in the instant action, namely: 1) he was denied effective assistance of counsel when counsel filed a motion to withdraw from the case due to a conflict of interest; 2) he was denied effective assistance of counsel when counsel failed to object to the trial court's definition of manslaughter; and, 3) he was denied effective assistance of counsel when counsel failed to object to the trial

3

court's instruction regarding the definitions of criminal and general intent. On July 7, 2010, the district court issued an Order denying Mitchell post-conviction relief. (St. rec., vol. 3). On September 23, 2010, the Louisiana Fifth Circuit, finding no error with the district court's denial of post-conviction relief, denied Mitchell's writ application. State v. Mitchell, No. 2010-KH-0682 (La. App. 5 Cir. 2010) (unpublished opinion). (St. rec., vol. 3). On October 7, 2011, the Louisiana Supreme Court likewise denied Mitchell's writ application. State ex rel. Mitchell v. State, 71 So.3d 303 (La. 2011).

On or about November 8, 2011, Mitchell filed the instant habeas corpus petition, arguing that counsel was ineffective due to a conflict of interest, and that counsel was ineffective for failing to object to the trial court's definition of manslaughter and the trial court's instruction regarding the definition of criminal and general intent. In its response (rec. doc. 16, p. 3), the State acquiesces that Mitchell's petition is timely and that he has exhausted his state court remedies. Accordingly, the Court will address the merits of Mitchell's claims following its review of the pertinent facts and applicable standard of review.

II. FACTS

In April of 2000, Henry Porter, Sr. ("Mr. Porter") lived with his wife, Evangeline Porter ("Mrs. Porter"), their two children,

4

Howard Bardell ("Howard") and Elena Smith ("Elena"), and Elena's two-year-old daughter. The family lived in a small, three-room shotgun home in Kenner. Mr. and Mrs. Porter slept in the front room, and Howard, Elena, and the child slept in the second room of the home.

Early in the morning hours of April 2, 2000, Elena's ex-boyfriend, the defendant herein, entered the home while all family members who were home at the time were asleep.[2] Elena awoke to find defendant standing over her bed pointing a gun to her head. She screamed and awakened her brother, Howard, and her father, Mr. Porter. Howard, who was sixteen years old at the time, ran toward his parents' bedroom. Defendant began firing, hitting both Mr. Porter and Howard. At the end of the gunfire, Mr. Porter lay dead from his wounds and Howard, who was shot twice, lay injured on the floor.

Defendant then grabbed Elena and ordered her to get her car keys, telling her she must come with him. Elena told defendant she did not have the car keys. After an unsuccessful search for the keys, defendant dragged Elena out of the house and through a wooded area in the rear of the home.

Howard was able to get to the phone and call relatives who

---

[2] Mrs. Porter had left earlier for her job at a nearby nursing home.

5

lived nearby.  The relatives came over and kicked in the door to find Mr. Porter dead and Howard injured.  A call to 911 brought police officers to the home shortly afterward.

Sometime later, State Trooper Omar Landrum ("Trooper Landrum"), who was working a detail on Airline Highway, saw a taxi go by with a man and a woman in the back seat.  The woman was staring at him in a way that caught his attention.  Trooper Landrum had just gotten the report about the shooting and kidnaping nearby and a description of defendant and Elena, so he stopped the taxi cab to investigate.  At that point, Elena got out of the cab and on the ground as instructed by Trooper Landrum.  Defendant did not obey the command and began to run.  Trooper Landrum got into his car and followed defendant through the streets of Kenner, eventually apprehending him in the 700 block of Williams Boulevard.

Elena told officers that she saw defendant throw the gun away and led officers to a convenience store nearby.  A search of the area pointed out by Elena produced a gun, which later proved to be the gun used in the shooting.

III. <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be

7

correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

IV. ANALYSIS

    A. Denied Effective Assistance of Counsel When Trial Counsel Filed Motion to Withdraw Due to Conflict of Interest

Mitchell argues that he was denied effective assistance of counsel due to the conflict of interest that existed between himself and counsel which led to counsel's unsuccessful effort, on the day of the trial, to withdraw from the case. The pertinent trial colloquy, which took place outside the presence of the jury, is as follows:

> MR. SCILLITANI [defense counsel]:
>    Judge, as we have discussed previously I have a conflict of how to proceed with this case with my client. My client wishes to pursue a defense that is different from the one that I believe is his best defense. As of this date, I have - - my client will not commit to a particular defense. I have been told and I have sought the advice of the Disciplinary Counsel, the Ethics Advisory Committee on how to proceed.
>    They have informed me that I must follow my client's wishes on how to go forward with this case. However, in trying to convince my client what the best defense is in this case, he agreed to blend both defenses. I have tried to advise him that the blending of these two defenses would weaken the one that I think is the best in this case.
>    At this point, at this stage of the proceedings I am conflicted in terms of I don't know what defense to go

> with because he will not commit to one or the other or both. He keeps wavering back and forth, back and forth. And that has put me in a predicament that I think would render me ineffective in his representation, and therefore, I am going to move to withdraw from this case.
>
> THE COURT:
>     Ms. Ciaravella?
>
> MS. CIARAVELLA [co-defense counsel]:
>     And I adopt everything that Mr. Scillitani has said. At this time the Defendant is unwilling to make a decision that will bring the case forward so I would join in his Motion to Withdraw from the record.

(St. rec., vol. 5, pp. 292-93)

In addressing the instant claim on post-conviction, the state district court set forth the well-settled law enunciated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), along with corresponding state law.

> [A] conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.
>
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the <u>Strickland</u> test must be established before relief will be granted by a reviewing court.
>
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not

> mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.
>
> The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

St. rec., vol. 3 (citations omitted).

In support of his ineffectiveness claim, Mitchell cites Holloway v. Arkansas, 435 U.S. 475 (1978). Mitchell claims that Holloway stands for the proposition that because the conflict of interest was brought to the court's attention prior to trial, the judge was "required to either appoint separate counsel or ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel." (Rec. doc. 1, supporting memorandum, p. 8, citations omitted). Because the trial court did not take the "required" action, Mitchell claims his constitutional rights were violated.

Mitchell's reliance on Holloway is misguided. Holloway involved a situation where the conflict of interest arose as a result of counsel's representation of three defendants in one trial. The Court determined that whenever "a trial court

10

improperly requires joint representation over a timely objection", no showing of prejudice is required, "reversal is automatic." Holloway, 435 U.S. at 488.

As the instant case did not involve "joint representation", improper or otherwise, Mitchell is not relieved of his burden to prove prejudice.  This Court finds that Mitchell has failed to satisfy his burden of proof in this regard.  He sets forth no specifics as to what successful defense would have been presented if he had been represented by different counsel.  As the trial court said in denying the motion to withdraw:

> It appears based upon your representations made to the Court that it would not make a difference what attorney represented the Defendant in this matter.  If I allow you to withdraw and had another attorney appointed as counsel, we'd find ourselves in the same predicament. And this certainly could continue forever.

(St. rec., vol. 5, trial transcript, p. 293).

Mitchell also cites Faretta v. California, 422 U.S. 806 (1972), for the proposition that when the trial judge denied counsel's motion to withdraw, he deprived Mitchell of his right to present his own defense.  (Rec. doc. 1, p. 9).  However, Faretta involved a situation where the defendant requested to represent himself and the trial court denied his request, requiring that he be represented by appointed counsel.  In the instant matter, Mitchell simply sought different counsel.  Mitchell, personally,

11

made no request to represent himself. Further, Mitchell raised no objection to the trial court's denial of counsel's motion to withdraw.

A defendant has a constitutional right to the services of an attorney devoted solely to his interests. Penson v. Ohio, 488 U.S. 75, 86-87 (1988). See also Glasser v. United States, 315 U.S. 60, 70 (1942); Von Moltke v. Gillies, 332 U.S. 708, 725 (1948) (plurality opinion). Mitchell has provided no evidence reflecting that either of his defense counsel were not solely devoted to his interests. Accordingly, the Court finds that the instant claim is without merit.

B. Denied Effective Assistance of Counsel When Counsel Failed to Object to the Trial Court's Definition of Manslaughter

Mitchell argues "that his trial counsel was ineffective for failing to object to the trial court's erroneous definition of manslaughter." (Rec. doc. 1, supporting memorandum, p. 10).

A review of the pertinent portion of the trial transcript reflects that the court, in his instructions to the jury, defined manslaughter as follows:

> Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.

(St. rec., vol. 7, p. 969).

12

Mitchell asserts that the above instruction was in error because manslaughter does not require specific intent on the part of the perpetrator. In support of his argument, Mitchell points to LSA-R.S. 14:31 which provides, in pertinent part:

A. Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

According to Mitchell, because the above definitions make no mention of a "specific intent to kill or inflict great bodily harm", the trial court's instruction "clearly misstates the law". (Rec. doc. 1, supporting memorandum, p. 11).

In rejecting the instant claim on post-conviction, the state district court provided: "Louisiana jurisprudence specifies that, as with first and second degree murder, manslaughter requires specific intent." (St. rec., vol. 3). In support, the court cited <u>State v. Humphrey</u>, 412 So.2d 507, 513 (La. 1981) (homicide committed under circumstances which reflect that offender actively desired his conduct to result in death or great bodily harm is

13

either first-degree murder, second-degree murder, or manslaughter, all of which contain the element of specific intent); and State v. Harris, 812 So.2d 612, 618 (La. 2002) (citations and quotation omitted) (Manslaughter is defined as a homicide that would be first-degree murder or second-degree murder, but provides that the offense is committed in sudden passion or heat of blood. Thus, as is the case with first and second degree murder, manslaughter requires specific intent.).[3]

The fact that the state trial court, in its jury instructions, may have violated state law, is of no moment for purposes of attaining federal habeas corpus relief. It is well established that federal habeas review is limited to questions of constitutional dimension. See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978 (1993); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979 (1998).

---

[3]In addressing the definition of "manslaughter" in the context of insufficient evidence claims, Louisiana federal district courts are split. See Stoot v. Cain 2010 WL 2924883 at *6 (W.D. La. May 28, 2010 ("Manslaughter, like second degree murder, requires proof of specific intent."); Papillion v. Cain, 2007 WL 3046063 at * 5 n.5 (W.D. La. July 31, 2007) ("Manslaughter, like second degree murder, requires proof of specific intent."); but see King v. Cain, 2011 WL 1100455 at *7 (E.D. La. March 1, 2011 (citations omitted) ("Although specific intent to kill is not necessary for a conviction of manslaughter, proof of a specific intent to kill is required for a conviction of attempted manslaughter.").

14

It is clear that Mitchell's constitutional rights were not violated by virtue of the trial judge's alleged misstep in his definition of "manslaughter". By virtue of its determination that Mitchell was guilty of second degree murder, the jury found that Mitchell did, in fact, have specific intent to kill. Thus, whether or not the crime of manslaughter does or does not require a showing of specific intent is irrelevant. The trial court's alleged error was harmless. See United States v. Gaudin 515 U.S. 506, 526 (1995) (jury instructions subject to harmless-error analysis).

   C. Denied Effective Assistance of Counsel When Counsel Failed to Object to Trial Court's Erroneous Instruction Regarding Definitions of Criminal and General Intent

Mitchell argues that counsel was ineffective due to his failure to object when the trial court erroneously used the word "defendant", rather than "offender", in describing specific and general criminal intent.

A review of the pertinent jury instructions reflects the following:

> Specific criminal intent is that state of mind which exists when the circumstances indicate that the **Defendant** actively desired the prescribed criminal consequences to follow his act or failure to act. Specific intent can be formed in an instant.
>
> General criminal intent is present when the circumstances indicate that the **Defendant** must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. General criminal intent is always present when

15

there is specific intent.

(St. rec., vol. 7, pp. 966-967) (emphasis added).[4]

Mitchell asserts that the improper use of the word "defendant" "created an improper inference". (Rec. doc. 1, supporting memorandum, p. 12). Specifically, it enabled the jury to infer that Mitchell, the defendant, had the specific and general criminal intent necessary to support a finding that he was guilty of second-degree murder.

In rejecting this claim on post-conviction, the district court, employing the burden of proof established in Strickland, supra, provided:

> The court does not find that counsel was ineffective to the point that he was not functioning as counsel by failing to object to the court's use of the word "defendant" instead of "offender." Furthermore, the

---

[4]Under state law, specifically, LSA-R.S. §14:10, specific and criminal intent are defined as follows:

(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the **offender** actively desired the prescribed criminal consequences to follow his act or failure to act.

(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the **offender**, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. [Emphasis added.]

16

>    petitioner does not prove prejudice to the point that the outcome of the trial cannot be trusted. This court specifically finds that it was the strength of the evidence, and not the performance of counsel, that convicted the petitioner.

(St. rec., vol. 3).

The above reasoning constitutes a reasonable application of Strickland to the facts of this case. Given the strong evidence against Mitchell, he has failed to show that he was prejudiced by the trial court's relatively slight error in using the term "defendant" rather than "offender" in two instances during the lengthy jury instructions.[5]

### RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Leo Mitchell be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

---

[5] In support of the instant claim, Mitchell cites several federal and state cases wherein counsel has been deemed ineffective "for failing to object to various types of jury instructions." (Rec. doc. 1, supporting memorandum, pp. 14-15). However, a review of these cases reflects that none involved the relatively minor error at issue in this case. Further, all required a showing of prejudice, a burden that Mitchell has failed to satisfy.

17

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[6]

New Orleans, Louisiana, this __14th__ day of August, 2012.

```
                              _____
                                   ALMA L. CHASEZ
                              UNITED STATES MAGISTRATE JUDGE
```

---

[6]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.

# 24th Judicial District Court
## Parish of Jefferson - State of Louisiana

| | | | |
|---|---|---|---|
| State of Louisiana | | Case Number: | 00-2982 |
| Versus | | Division: | M |
| LEO MITCHELL | | Complaint: | D8010500 |
| DOB: | 11/17/1973 | | |
| Judge: | Henry G. Sullivan, Jr. | Date: | 07/21/2008 |
| ADA: | William C. Credo, III | Court Reporter: | Pamela Lobrono |

The defense attorney waives the presence of the Defendant, LEO MITCHELL.

The Defendant was represented by SUSAN CIARAVELLA (IDB).

The Defendant is in Louisiana State Penitentiary.
The State withdrew its Multiple offender bill and will not go forward with it.
The Defense does not objects.

/s/Kelly Boudreaux
_____
Kelly Boudreaux, Deputy Clerk